**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

---------------------------------------------------------
)
)
MELISSA SOLANO and CEIL STEARMAN   )
)   08 CV 3909
            Plaintiffs,   )
)   Judge Joan Humphrey Lefkow
     - against -   )
)   Magistrate Judge Valdez
ROLLING STONE L.L.C.,   )
)
            Defendant.   )
)
)
--------------------------------------------------------- )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PURSUANT TO RULE 12(b)(6), OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

      Defendant Rolling Stone LLC ("Rolling Stone" or "Defendant") respectfully submits this

memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or,

in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

**PRELIMINARY STATEMENT**

      Plaintiffs Melissa Solano ("Solano") and Ceil Stearman ("Stearman") (collectively,

"Plaintiffs"), were featured on the popular website hotchickswithdouchbags.com (the "Website")

in a photograph depicting them posing topless (with their hands obscuring their breasts) while

kissing a man who is standing with his arms around them (the "Photograph"). Plaintiffs – who

have also performed at bi-sexual toy shows with Chicago's "premier bachelor party service" –

commenced this action attempting to state false light and right of publicity claims arising out of

*Rolling Stone* magazine's republication of the Photograph to illustrate its "On the Web" editorial

column which featured the Website. In their complaint, Plaintiffs admit that the Photograph is of

them. They also do not or could not reasonably challenge that the Photograph originally

appeared on hotchickswithdouchbags.com or that *Rolling Stone*'s use of the Photograph was

pure editorial commentary on the "cheesy" Website. Indeed, Plaintiffs have even promoted the

fact that they were "both featured in the rolling stone magazine together." Plaintiffs' claims are meritless and should be dismissed for several independent reasons.

As a procedural matter, Plaintiffs' claims are barred by the applicable one-year statute of limitations, as Plaintiffs filed their claims more than one year after publication of the Photograph in *Rolling Stone*. Even if Plaintiffs' claims were timely, they have not been sufficiently alleged, and fail as a matter of law. Plaintiffs' supposed "false light" claim fails because Plaintiffs cannot establish – nor have they specifically alleged – that Defendant's republication of the Photograph is "false" in any respect. Plaintiffs' claim pursuant to Illinois Right of Publicity Act fails because Rolling Stone's publication of the Photograph to illustrate its commentary on the Website where the photo first appeared constituted a non-commercial use specifically exempted under the express language of the Act. Finally, while Plaintiffs claim entitlement to damages "well in excess" of $30,000, any allegation of reputational harm or mental suffering is belied by their actual touting of the fact that they appeared in *Rolling Stone* magazine. Accordingly, Plaintiffs' complaint must be dismissed.

## STATEMENT OF FACTS

Based on the complaint, documents referred to therein and information not challenged by Plaintiff, the undisputed or indisputable facts are as follows:[1]

### The Parties

Defendant is the owner and publisher of the renowned magazine *Rolling Stone*. Among other things, *Rolling Stone* publishes a regularly recurring column called "On The Web" in the "Internet" section of the magazine (the "Column"), which features a series of websites selected by the editors of the magazine which they believe might be of interest to *Rolling Stone*'s readers. Declaration of Deborah Dragon, sworn to August 7, 2008 ("Dragon Decl.").

Plaintiffs Solano and Stearman are residents of Cook County Illinois. Until recently, Plaintiffs were among the "babes" featured on a bachelor party service by the name of Next Plateau Chicago ("NPC"). NPC (available at http://www.nextplateauchicago.com) describes itself as "Chicagoland's premiere bachelor party service" with a specialty in "2 girls bi-sexual

---

[1]    Defendants make this pre-discovery motion on questions of law based on what they believe to be undisputed, or indisputable, facts. Should this motion be denied, defendants reserve the right to renew this motion on a fully -developed record.

toy shows." Its website advertises that "our girls will perform for you intimately with toys, fruit, etc. all the while keeping the bachelor apart [sic] of the show." True and correct printouts from the NPC website are annexed as Ex. C to the Declaration of Elizabeth A. McNamara, sworn to August 7, 2008 ("McNamara Decl.").

At NPC, Plaintiffs used the professional names of "Brook" and "Ashley" and advertised that they perform both together and individually. "Brook" and "Ashley" each had their own page on the NPC website where they display photos of themselves topless and/or fully nude. True and correct copies of "Brook's" and "Ashley's" web pages are annexed to the McNamara Decl. as Ex C. The photos of Plaintiffs on the NPC site were larger and more revealing than the *Photograph* republished in *Rolling Stone*. In one photo on the NPC site, "Ashley" appeared fully nude reclining on a bed. In another "Brook" appeared topless in a pose strikingly similar to that in the Photograph. The Ashley and Brook pages each emphasize their willingness to engage in an "amazing" or "wild and crazy" 2-girl show. Indeed, far from evidencing any concern with Rolling Stone's publication, "Ashley" gloated on her page that "with my girlfriend [Brook] we were both featured in the rolling stone magazine together." *Id.*[2]

## The Photograph

Plaintiffs do not dispute – nor could they – that the Photograph first appeared on the popular website www.hotchickswithdouchebags.com beginning on or about November 29, 2006 (the "Website"). The Photograph shows only Plaintiffs' profiles – their full faces and bare breasts are not visible – and does not display any other recognizable traits, characteristics, or personal effects. Despite their allegations to the contrary, the Photograph does not readily identify Plaintiffs. Dragon Decl., Ex. D.

The Website describes itself as providing "pictures of hot chicks with total and complete douchebags." *Id.*, Ex. C. The founder of the popular Website states on the homepage: "this site is all about poking fun at douche-scrotes and the hotties who love them . . . If you're in a photo and upset about the verbal smackdown you morally and spiritually deserve, email me and I'll take down the photo." *Id.* Indeed, given its popularity, a book featuring selected photographs

---

[2]    While it appears that the NPC website has been recently updated, the pages attached to the McNamara Decl. reflect the contents of the website at the time this suit was filed.

and commentary from the Website was recently published by a division of Simon & Schuster. McNamara Decl., Ex. D.

On or about November 29, 2006, a large version of the Photograph was posted on the Website as "HCwD of the Week".  Comparing the photograph to others posted on the site, the Website comments that the Photograph of Plaintiffs "wins hands-down this week . . . This is mainly based on the juggernaut strength of the hotties in question. Even though you cannot see their faces, they are clearly keen on running around naked, which makes them both stars in my book."  Dragon Decl., Ex. D.  While the Photograph was removed from the Website well after *Rolling Stone's* publication, Plaintiffs do not deny – nor could they – that the Photograph had been prominently featured on the Website.  McNamara Decl., Ex. A, *passim*.

**Republication of the Photograph in the Column**

The "On The Web" editorial column appearing in the "Internet" section of the May 31, 2007 issue of *Rolling Stone* magazine (the "Column") featured five different websites selected by *Rolling Stone*'s editors that they believed would be of interest to the magazine's readers.  One of the sites featured was hotchickswithdouchebags.com.  The Column, which appeared on page 42 of the magazine and occupied about a quarter of a page, included three photographs to illustrate the contents of several of the websites discussed.  Dragon Decl., Ex. C.

The first website discussed in the Column is comedian Will Ferrell's website, "funnyordie.com".  According to the Column, the site provides video clips by the comedian and "users vote on which clips are the most gut-busting and which should languish in comedy hell." The Column suggests that its readers "check out the clip" where the popular children's cartoon character Dora the Explorer receives a telephone call from Alec Baldwin (an apparent spoof on a notorious profanity-laden telephone message Alex Baldwin left for his real-life daughter).  To illustrate the website's content, photographs of Will Ferrell, Alex Baldwin and a rendering of Dora the Explorer appear along side the Column's description of the website

The last website featured in the Column is "hotchickswithdouchebags.com."  Titled "Say Cheesy," the item notes that "the site name says it all: photos of gelled-and-tanned dudes and hot babes mugging it up for the camera."  A small version of the Photograph (approximately one inch by one inch) appears next to the description of the Website as an example of the material that can be found on the site.  Plaintiffs appear topless, with their hands covering their breasts, and kissing a man standing in between them.  While their full faces are not visible and are further

obscured by some blurring, the Photograph was selected to illustrate what can be found on the Website, namely "hot babes mugging it up for the camera." Dragon Decl., Exs. C, D.

**The Present Action**

On May 24, 2008, Plaintiffs filed the complaint in this action in the Law Division of the Circuit Court of Cook County. The complaint purports to allege that Defendant's publication of the Photograph (1) placed Plaintiffs in a false light and (2) constituted an unauthorized commercial use of their likeness in violation of the Illinois Right to Publicity Act, 765 ILCS 1075/60 (the "Act"). Plaintiffs allege that publication of the Photograph was "injurious to [their] good name[s] and reputation[s], caused them "mental suffering and anguish," and deprived them of the "value" of their images; Plaintiffs seek damages to compensate them for the aforesaid injuries "well in excess" of the jurisdictional limit of $30,000. A true and correct copy of the Complaint is annexed to the McNamara Decl. as Ex. A ("Cplt."). On July 9, 2008, Defendant removed the action to this Court.[3] *Id.*, ¶ 2.

On receipt of the Complaint, Rolling Stone promptly put Plaintiffs on notice, by letter to their counsel dated June 18, 2008, that their legal claims were untenable as a factual and legal matter. McNamara Decl., Ex. B. In particular, Rolling Stone stated that under no set of circumstances could Plaintiffs, who have earned a living by performing in bi-sexual sex toy bachelor shows, and who advertised their services by posting nude photos of themselves on the internet, establish that publication of the Photograph placed them in a "false light." Even setting aside Plaintiffs' employment with the bachelor party agency, Plaintiffs have failed to allege what is "false" about *Rolling Stone*'s republication of the Photograph in connection with its commentary on the Website. Put simply, Plaintiffs' false light claim is frivolous.

Plaintiffs' right of publicity claim is equally without merit. The Illinois Right of Publicity Act contains an express carve-out for the use of an individual's identity where, as here, it was published as part of a magazine "article" and therefore was used for "non-commercial purposes." Finally, Plaintiffs' allegations that they were "harmed by the publication" of the Photograph and have suffered mental anguish and suffering are disingenuous at best, fraudulent

---

[3]    Defendant removed the action to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441, 1446, and 1332.

at worst, as evidenced by the fact that Plaintiffs proudly gloat on the NPC website that they were "featured in the rolling stone magazine together."

In response to Defendant's letter, counsel for Plaintiffs confirmed by telephone and e-mail that Plaintiffs would be amending their complaint to drop the "false light" claim, leaving only Plaintiffs' claim brought pursuant to the Act. As of this date, however, Plaintiffs have not withdrawn or amended their Complaint. *Id.*, ¶ 3. For the reasons set forth below, Plaintiff's claims lack any basis in fact or law and should be dismissed.

## DISCUSSION

Dismissal of a complaint is appropriate when, as here, no set of facts could even be proved under the pleadings that would entitle the plaintiff to recover. *Raveling v. HarperCollins Publishing, Inc.*, 2005 WL 900232, at *2 (7th Cir. 2005); *Esdale v. American Mut. Ins. Co.*, 914 F. Supp. 270, 271 (N.D. Ill. 1996) (summary judgment granted when "there can be but one reasonable conclusion."). Further, whether a complaint states a valid cause of action is a question of law. *Majumdar v. Lurie*, 274 Ill.App.3d 267, 268, 653 N.E.2d 915, 917 (1st Dist., 1995). Here, the Complaint fails to state viable claims for several independent reasons.

### I.

### PLAINTIFFS' CLAIMS ARE UNTIMELY

Both of Plaintiffs' claims fail because they are barred by the applicable one-year statute of limitations. Under Illinois law, "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." *See, e.g., Blair v. Nevada Landing Partnership*, 369 Ill.App.3d 318, 323, 859 N.E.2d 1188, 1192 (2d Dist. 2006) ("since the Right of Publicity Act completely supplanted the common-law tort of appropriation of likeness, we find applicable the one-year statute of limitations that pertained to the common law tort.") (internal citations omitted). Under Illinois law, privacy actions are "complete at the time of the first publication." *Id.* at 325, 1193 (citing *Founding Church of Scientology of Washington, D.C. v. Am. Medical Ass'n*, 60 Ill.App.3d 586, 588 377 N.E.2d 158, 160 (1st Dist., 1978)); *Bryson v. News Am. Publications, Inc.*, 174 Ill.2d 77, 105, 672 N.E.2d 1207, 1222 (Ill. 1996) (one-year limitations period for false light invasion of privacy claim commenced on the date article was published).

Rolling Stone's records document that the on-sale date of the May 31, 2007 issue of *Rolling Stone* (*i.e.,* the date of first publication) was May 18, 2007.  More than 1,700,000 copies of the issue were distributed nationally.  Declaration of Camp Shropshire, sworn to on August 7, 2008, ¶ 11.  By May 18, 2007, newsstands across the country (including Chicago) received the issue and upon receipt promptly placed the magazine on sale.  Accordingly, based on Rolling Stone's records, the issue was widely available to the public no later than May 18, 2007 and sales actually occurred beginning May 17, 2007.  *Id.*, ¶ 10.  However, this action was filed in Circuit Court on May 24, 2008, more than one year *after* the magazine was published and made available to the public.  *Andrews v. Time Inc.,* 690 F.Supp. 362 (E.D.Pa. 1988) (statute of limitations measured from the time the publication was made available to the public, not the date of the issue); *Khaury v. Playboy Publishers, Inc.*, 430 F. Supp. 1342 (S.D.N.Y. 1977) (same).  Therefore, even if Plaintiffs' claims were factually or legally viable – which, as explained below they plainly are not – they are barred by the one-year statute of limitations.

## II.

## PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR FALSE LIGHT INVASION OF PRIVACY

Under the facts that are undisputed or could not be seriously challenged, it is clear that Plaintiffs lack any colorable basis for their claim that Defendant placed them "in a false light before the public by publishing an identifiable topless picture."  Cplt., ¶ 5(a), 16(a).  It is axiomatic that a plaintiff stating a claim for false light invasion of privacy must establish, *inter alia*, falsity.  *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (denying claim for false light invasion of privacy where plaintiff failed to establish how defendant's "accurate quoting of [his] statement" placed him in a false light); *Salamone v. Hollinger Int'l, Inc.*, 347 Ill.App.3d 837, 844, 807 N.E.2d 1086, 1093 (1st Dist 2004) ("Plaintiff has failed to allege the most basic element of a false light cause of action: that the statement was false").  Yet, the undisputed facts establish that there was nothing "false" about Rolling Stone's publication of the Photograph, and, tellingly, Plaintiffs' have failed to allege *what* specifically was false about Defendant's use of it.  That is fatal to their claim.  *Kirchner v. Greene*, 294 Ill.App.3d 672, 691 N.E.2d 107 (1st Dist. 1998) ("Absent some allegation as to what specific statement was false, a claim based on false light simply fails to satisfy the most basic element of the cause of action.")

Plaintiffs do not deny – nor could they – that the Photograph of them topless and kissing a man is an actual photo of them; nor do they dispute that the Photograph was obtained from the website hotchickswithdouchebags.com.  Further, plaintiffs cannot dispute that they performed in bisexual sex-toy shows at NPC and that numerous nude images of them posed together and separately are posted on the NPC website.  In fact, the photos of Plaintiffs on the NPC site are significantly larger and more revealing than the Photograph as republished in *Rolling Stone* and show Plaintiffs' full faces and bodies (which the Photograph does not).

Indeed, by *admitting* that Plaintiffs are the women posing topless in the Photograph and in no way denying that the Photograph appeared on the hot chicks Website, the Complaint alone confirms that there is nothing "false" about the Photograph or *Rolling Stone*'s use of the Photograph to comment on the Website, i.e., describing the site as displaying photos of "hot babes mugging it up for the camera."[4]  The law is clear that a plaintiff cannot state a viable claim for false light invasion of privacy where, as here, she merely objects to the inclusion of her photograph in a publication but cannot deny that she was accurately portrayed in the photograph. *See, e.g.*, *Raveling v. HarperCollins Publishers, Inc.*, 2004 WL 422538, at *2 (N.D. Ill. Feb. 10, 2004) (motion to dismiss granted where claimant's "objections are not based in law, but are merely based upon her own displeasure and embarrassment resulting from the inclusion of a photograph which accurately depicts her") *Aff'd.* 2005 WL 900232 (7th Cir. 2005).

Nor do the facts support Plaintiffs' claims that they were injured by Defendant's republication of the Photograph.  First, Plaintiffs do not dispute that the Photograph was featured on the popular Website.  It is inconceivable that Plaintiffs could suffer cognizable reputational harm, as alleged, from the republication of the Photograph in a magazine such as *Rolling Stone* when the same photo was long publicly available on the worldwide web at a site bearing the name "Hot Chicks With Douche Bags."  Second, Plaintiffs' allegations of injured feelings, "mental suffering and anguish" and reputational injury, which underlie their claim for damages,

---

[4]    To dismiss the false light claims, the Court need not even reach or consider the fact that Plaintiffs have earned a living by performing in bi-sexual sex toy bachelor shows and advertised their services by posting nude photos of themselves on the internet.  Yet, these additional facts underscore the absurdity of their contention that an accurate picture of them "topless and kissing a man" places them in a "false light."

are further belied by the fact that Plaintiffs have exploited their appearance in *Rolling Stone* to promote their own commercial endeavors at NPC.[5]

In short, Plaintiffs' "false light" claim lacks any basis in fact or law and must be dismissed.[6]

## III.

## REPUBLICATION OF THE PHOTOGRAPH DOES NOT GIVE RISE TO A COLORABLE CLAIM UNDER THE ILLINOIS RIGHT OF PUBLICITY ACT

Defendant's publication of the Photograph in an editorial feature which specifically comments on the Plaintiffs was for a non-commercial purpose and, therefore, does not give rise to a viable claim under the Act.

"Recognizing the serious First Amendment implications inherent in regulating artistic and creative expression," Illinois' Right of Publicity Act "unambiguously exempts artistic works." *Collier v. Eddy Murphy, et al.*, 2003 U.S. Dist. Lexis 4821 (N.D. Ill. 2003). Thus, the Act does not extend to all non-commercial uses of an individual's identity, whether in a book, play, film or, as here, in a magazine. The operative section of the Act provides: "A person may not use an individual's identity for *commercial purposes* . . . without having obtained previous written consent . . . ." 765 ILCS 1075/30 (emphasis added). A "commercial purpose" is defined by the Act as: "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. The Act is typically invoked when an individual's image or likeness is used to directly promote or advertise an unrelated product or service – not where, as

---

[5]    It is also far from clear that Plaintiffs are even identifiable in the Photograph. The Photograph, which measures no more than one by one inches shows only Plaintiffs' profiles. The allegation that Plaintiffs are identifiable because the Photograph shows their "face, multiple tattoos on [their] bodies, and a personal necklace" (Cplt., ¶ 5(b)) is entirely contradicted by close inspection of it. Not only are Plaintiffs' full faces not shown, but no tattoos or personal effects are visible. No recognizable tattoos are sufficiently discernable such that a reasonable viewer would recognize them as Stearman's or Solano's tattoos.

[6]    Plaintiffs have effectively conceded this point by confirming in writing that they intend to drop their false light claim. McNamara Decl., ¶ 3. Despite counsel's representations, Plaintiffs have not served an amended complaint as of this date and Defendant has been put to the expense of briefing this point. *Id.*

here, Plaintiffs' identity is used in an interior editorial column to illustrate the subject matter of a newsworthy publication.[7]

Inevitably, a right of publicity claim can conflict with the First Amendment when the media makes use of an individual's identity.  In light of the serious constitutional implications inherent in regulating the use of an individual's likeness, the Act expressly carves out several exceptions to the right of publicity.  Notably, the Act does not apply to the "use of an individual's identity in an attempt to portray [or] describe . . . that individual in a . . . book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work . . ."  Similarly, the Act does not apply to "use of an individual's identity for *non-commercial purposes*, including any news, public affairs, or sports broadcast or account, or any political campaign."  675 ILCS 1075/35(b)(1)(2) (emphasis added).  Defendant's publication of the Photograph fits squarely within these statutory exceptions.

Defendant's use of the Photograph in a featured article in its magazine to illustrate the type of content found on the website Hot Chicks with Douchebags included specific commentary about Plaintiffs – "hot chicks muggings it up for the camera" – and is indisputably not a commercial use.  It is widely recognized that "[i]n the vast majority of cases, the courts permit the unauthorized use of a person's picture to illustrate a news article or story . . . so long as the picture bears a 'real relationship' to the subject matter of the story."  J. Thomas McCarthy, 1 Rights of Publicity and Privacy § 6:87 (2d ed.) (March 2006).  For example, in *Buzinski v. DoAll Co.*, 31 Ill.App.2d 191, 175 N.E.2d 577 (1st Dist. 1961), the court rejected plaintiff's claim that a photograph of him standing next to a "land yacht" published in an article about "land yachts" violated his right to publicity, holding:

> "The editors of the magazine were legitimately informing their readers about a matter of public interest in publishing the picture of the land yacht . . . .The only question is whether the picture complained of has so tenuous a connection with the article that it can be said to have no legitimate relationship to it.  I think it has a relationship to the article.  It is used to illustrate one of the points made by the author . . . .[I]t would be far fetched to hold in this

---

[7]   Courts have held that a party cannot take someone's image and use it on the packaging of, for example, a hair care product, without being subject to a right of publicity claim (*Toney v. L'Oreal*, 406 F.3d 905 (7th Cir. 2005)).  *See also Trudeau v. Lanoue*, 2006 WL 516579 (N.D. Ill. Mar. 2, 2006) (website can not use an individual's image to promote products that he never consented to endorsing).  These cases, however, are a far cry from the case at hand, where Plaintiffs' images were used to reflect the contents of the article it appears in, rather than to endorse or promote a product or service.

case that the picture was not used in an illustrative sense, but merely to promote the sale of the paper."

*Id.* at 195, 196. 579 (citing *Lahiri v. Daily Mirror*, 162 Misc. 776, 295 N.Y.S. 382 (N.Y. Sup. N.Y. Co. 1937)).[8] Similarly, the court in *Berkos v. National Broadcasting Co.*, affirmed that a "commercial appropriation claim cannot be stated where a plaintiff's name or likeness has been used as part of a 'vehicle of information' such as the news media and there is a reasonable relationship between the likeness and the subject matter of the report or story." 161 Ill.App.3d 476, 495 515 N.E.2d 668, 679 (1st Dist. 1987). The plaintiff in *Berkos*, a judge sitting in the county court, brought a claim for misappropriation of his name and likeness in a news broadcast about county corruption. The court held "[t]he use by [defendants] of [plaintiff's] photograph in the broadcast in question was a part of the communication of news information, and is clearly distinguishable from the commercial use made of the plaintiff's likeness in *Eick v. Perk Dog Food Co.*, 347 Ill. App. 293, 106, N.E.2d 742 (1st Dist., 1952), where the defendants used the plaintiff's photograph in a dog food advertisement." *See also Schivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 776 N.E.2d 693 (1st Dist. 2002) (television advertisement showing owner of hot dog stand being questioned by a reporter was not broadcast for commercial purposes, but for the noncommercial purpose of promoting news reports), *c.f. Christianson v. Henry Holt & Co. LLC*, 2007 WL 2680822 (C.D. Ill. June 29, 2007) (when plaintiff is not mentioned or described in book use of her likeness on cover of book was a commercial use).[9]

Illinois law is consistent with the well-established principle that publishers are free to illustrate articles with photographs that have some reasonable relation to the content of the article. In *Messenger v. Gruner & Jahr Printing and Publishing*, 94 N.Y.2d 436, 727 N.E.2d

---

[8]    Given the similarity to New York's right of publicity statute, courts in Illinois have routinely relied on New York cases to determine the scope of the Act. *See, e.g., Buzinsky, supra*; *Christianson v. Henry Holt and Co. LLC*, 2007 WL 2680822 (C.D. Ill. June 29, 2007).

[9]    Should Plaintiffs argue that the Photograph is somehow offensive, that conclusion does not render an otherwise non-commercial use actionable. That "plaintiffs may deem the use of the photograph offensive cannot vitiate its use once the finding has been made that such use is outside the scope" of the right of publicity. *Creel v. Crown Publishers, Inc.*, 115 A.D.2d 414, 496 N.Y.S.2d 219 (1st Dep't 1985) (publication of photograph of plaintiff sunbathing in the nude in guide book to nude beaches was not actionable) (internal quotations omitted); *Lane v. MRA Holdings, LLC*, 242 F. Supp.2d 1205 (M.D. Fl. 2002) (dismissing plaintiff's right of publicity claim arising out of the publication of footage of plaintiff exposing her genitals and breasts in the video *Girls Gone Wild* and in advertisements promoting that video, on the ground that there was no showing that plaintiff's name and likeness had been used to "directly promote a service or product").

549 (N.Y. 2000), the New York Court of Appeals rejected a model's claim against a magazine for its publication of her likeness to illustrate a letter about promiscuity in a sex advice column. The court affirmed that "consistent with the statutory – and constitutional – value of uninhibited discussion of newsworthy topics, we have time and time again held that, where a plaintiff's picture is used to illustrate an article on a matter of public interest, there can be no liability . . . unless the picture has no real relationship to the article or the article is an advertisement in disguise."  And, addressing the use of a picture of plaintiff wearing a leather bomber jacket in a magazine column about "new and unusual products," including bomber jackets – not dissimilar to *Rolling Stone*'s column recommending various websites – New York's Court of Appeals held no right of publicity claim could be stated since the photograph illustrated a matter of public interest.  *Stephano v. News Group Publs.,* 64 N.Y.2d 174, 179-186, 485 N.Y.S.2d 220 (N.Y. 1984).

There can be no question that the Rolling Stone published the Photograph as part of a "vehicle of information," for the purpose of illustrating a newsworthy article to which it bore a "real relationship."  Plaintiffs cannot dispute that the Photograph originally appeared on, and was obtained by Rolling Stone from, the website hotchickswithdouchbags.com, and was republished by Rolling Stone as part of an article discussing that Website.  The Column describes the Website as "cheesy" with a "title that says it all" by displaying "photos of gelled-and-tanned dudes and hot babes mugging it up for the camera."  The Photograph – which Plaintiffs do not claim is inaccurate in any respect – depicts Plaintiffs as "hot babes" with a "tanned dude."  No one could seriously dispute that the Photograph accurately illustrates the content of the Website that is the subject of the article.  The subject of interesting and unique websites is certainly a matter of some public interest protected by the First Amendment.  If a guide to nude beaches (*see Creel, supra*), an article about unusual vehicles (*see Buzinski, supra*), and a magazine column reporting on "new and interesting products" (*Stephano, supra*) are sufficiently newsworthy, so too is the Column informing readers of unique interesting websites.  *Lemerond v. Twentieth Century Fox Film Corp.*, 2008 WL 918579, at *2 (S.D.N.Y. Mar. 31, 2008) ("'public interest' and 'newsworthy' have been defined in the most liberal and far reaching terms. . . . [c]ourts should be wary not to supplant the editorial judgment of the media in determining what is

'newsworthy' or of 'public interest").[10]  Publication of the Photograph is well within the Act's broad exemptions and simply cannot state a claim.

In sum, publication of the Photograph as part of an editorial article about unique websites does not violate the Act.  In view of the nature of the Photograph and the context in which it appears it is difficult to see how Plaintiff's can seriously urge that their likeness has been commercially exploited such that they are entitled to damages.

## CONCLUSION

Based on the foregoing, Rolling Stone respectfully requested that Plaintiffs' complaint be dismissed in its entirety.

Dated:  August 8, 2008

Respectfully submitted,

ROLLING STONE, LLC

By:/Steven L. Baron/                                
      Steven L. Baron (ARDC #6200868)

Mandell Menkes LLC
333 West Wacker, Suite 300
Chicago, IL  60606
(312) 251-1000

*Attorneys for Defendant*

Of Counsel:
Elizabeth A. McNamara (admitted *pro hac vice*)
Bryan M. Tallevi (admitted *pro hac vice*)
Davis Wright Tremaine LLP
1633 Broadway
New York, NY 10019

---

[10]    As discussed above, it is not clear that Plaintiffs are even identifiable in the Photograph.  The Act defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary reasonable viewer or listener."  ILCS 765 1075/5.  For the reasons already noted, no reasonable viewer would be able to identify Plaintiffs in the Photograph.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date caused to be served a true and correct copy of the foregoing ***Defendant's Memorandum Of Law In Support Of Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(B)(6), Or, In The Alternative, For Summary Judgment*** on:

> Steven A. Sigmond
> The Law Offices of Steven A. Sigmond
> 354 N. Canal
> Suite 1208
> Chicago, IL 60606
> E-mail:  steve@siglaw.com

via messenger delivery and via electronic mail on August 8, 2008.

> /Steven L. Baron/
> Steven L. Baron